# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CEZARY WOJCIK, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 14-CV-4854 |
| COUNTY OF COOK, PAUL SKRIVAN, DAWN HOWELL, REBECCA MASI, DRUCILLA KILGORE individually, SHERIFF'S DEPUTY KALOUDIS, SHERIFF'S DEPUTY ALI, and COOK COUNTY SHERIFF THOMAS DART, in his official capacity, | ) ) ) ) ) ) ) ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Cezary Wojcik, also known as Anthony Avado, alleges that the defendants were deliberately indifferent to his serious medical needs during his four-day incarceration at the Cook County Jail ("CCJ") in June 2013. A Cook County judge had ordered that Wojcik serve his term of incarceration at Cermak Memorial Hospital ("Cermak") and receive certain prescription medications while incarcerated. It is undisputed that the judge's order was not implemented, but the evidence of record does not establish that any defendant named in this suit was responsible for that failure, much less that any defendant violated the Constitution by failing to see that the order was carried out. Accordingly, the defendants' motion for summary judgment is granted.

# BACKGROUND[1]

On June 27, 2013, Cook County Circuit Judge Sharon Sullivan sentenced Wojcik to serve four[2] days of incarceration at the Cermak Memorial Hospital ("Cermak") on a DUI conviction. Judge Sullivan attached to the sentencing order (also, "mittimus") a letter from a medical doctor listing the medications that Wojcik was then taking and ordered "that during his incarceration, Anthony Avado a/k/a Cezary Wojcik is to be administered the medications listed on the attached letter as per the orders of Jerry A. Jakimiec, M.D." Defs.' Statement of Facts ("DSOF") Ex. B Wojcik Dep. Ex. 2, Order & Letter from Jerry A. Jakimiec, M.D., ECF No. 129-3 (capitalization omitted). These medications consisted of: Alprazolam (Xanax), Clonazepam, Depakote ER, Prozac, Mysoline, and Norvace. Defendant Sheriff's Deputy Steve Kaloudis processed Wojcik at the courthouse and placed Judge Sullivan's order with the doctor's letter in a plastic bag along with Wojcik's other property. Wojcik was not allowed to personally carry the plastic bag with him to CCJ, but the plastic bag was processed by CCJ and held there until Wojcik was released on June 30.

Defendant Sheriff's Deputy Ali is one of the transport officers who drove Wojcik from the courthouse to CCJ. Wojcik contends that he was handcuffed with no safety belt and broke his back during the bus ride to CCJ. To support the contention that he broke his back, Wojcik cites to non-pertinent paragraphs of the amended complaint; a doctor's note that says Wojcik reported that he was having constant low back pain after he fell when a bus suddenly stopped, but that mentions no broken bone; and X-rays, at least one of which appears to be from 2018 (nearly five years after

---

[1] Because this is the defendants' motion for summary judgment, the Court construes all facts and draws all reasonable inferences in the light most favorable to Wojcik. *See Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 977 (7th Cir. 2014).

[2] Wojcik was originally sentenced to ten days, but his sentence was reduced to four days after accounting for good time credit and credit for time served.

the incident), unsupported by any medical interpretation of those X-rays. Wojcik does not allege or provide evidence that Ali or any other defendant knew he had fallen in the bus and injured his back.

Wojcik was using the alias "Anthony Avado" during his June 2013 incarceration at CCJ. But Wojcik claims that "[a]rriving at intake CCJ [he] stated [his] name as Cezary Wojcik and complained to the officer about [his] court order and health issues and concerns." Pl.'s Statement of Additional Facts ("PSOF")[3] ¶ 4, ECF No. 138. Wojcik does not, however, allege to whom he voiced his health issues and concerns, to whom he mentioned his court order, or to whom he stated his name as Cezary Wojcik. On June 27, the date of his arrival, and the next day, June 28, Wojcik was seen by the four individual CCJ defendants: Nurse Drucilla Kilgore, Rebecca Masi,[4] Physician Assistant Paul Skrivan, and Nurse Dawn Howell.

Nurse Kilgore performed Wojcik/Avado's[5] initial intake screening. Wojcik/Avado reported to Kilgore that he had a history of seizures, hypertension, and heart problems including irregular heartbeat. Kilgore noted that Wojcik/Avado "appeared normal" and that his vital signs

---

[3] Wojcik did not support his Statement of Additional Facts with an affidavit. But because Wojcik declared under penalty of perjury that the factual assertions in his statement of facts and in his opposition statement (both at ECF No. 138) are true, and because a "document filed *pro se* is to be liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted), the Court treats those factual assertions as if they were set forth in an affidavit from Wojcik. *See Sealed Plaintiff v. Sealed Defendant # 1*, 537 F.3d 185, 191 (2d Cir. 2008) ("[The obligation to construe pleadings of pro se litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.").

[4] The defendants assert that Rebecca Masi is a mental health specialist, but Wojcik contests that assertion as not reflected in the record. Pl.'s Resp. to DSOF ¶ 20, ECF No. 138. Resolution of this dispute is not material to the Court's ruling.

[5] The defendants recorded Wojcik's name as Avado throughout his medical screening. Where a defendant identified the plaintiff by name, this opinion will use "Wojcik/Avado" to indicate that the defendant understood the plaintiff's name to be Avado at the time of their encounter with him.

were stable. Defs.' Statement of Facts ("DSOF") ¶ 17, ECF No. 129.[6] Kilgore also noted that Wojcik/Avado took medication for Parkinson's disease and Alzheimer's disease, and Wojcik/Avado recalls telling someone when he was being processed that he had Parkinson's and Alzheimer's. Pl.'s Resp. to DSOF ¶ 19, ECF No. 138. Kilgore's intake summary reflects that, at the outset of the assessment, Wojcik denied that he had ever been treated for mental health issues or prescribed medications for mental health problems. Several pages later, however, the intake report reflects that Wojcik/Avado's "current medication list" included "Psych Meds, Other: MEDS FOR PARKINSON, ALHEIMER." [sic]. DSOF Ex. D, SAO WOJCIK 00009, ECF No. 129-5. Wojcik/Avado does not allege, and the intake form does not reflect, that he told Kilgore about Judge Sullivan's order or the prescription list from his doctor. Because Wojcik/Avado indicated that he had previously been prescribed medications to address psychiatric problems, Kilgore referred Wojcik/Avado for a mental health assessment.

Defendant Masi performed the mental health assessment of Wojcik/Avado after Kilgore's initial screening. Wojcik/Avado claims that he "[a]dmitted to taking medications including Xanax 2 mg and Clonazepam 2 mg which was explained to Rebecca Masi that the documents were in a placed in sealed plastic bag with [his] clothes on June 27, 2013." PSOF ¶ 6 (grammatical errors preserved). Wojcik/Avado also "complained to Masi[] about experiencing a panic attack, confusion, palpitations, pounding of the heart, chest pain, discomfort, and anxiety." *Id.* ¶ 8. Masi noted that Wojcik/Avado said he had been prescribed Xanax and Clonazepam to be taken twice daily. Masi consulted a psychiatrist who checked the Illinois Controlled Substance Database to verify that Wojcik/Avado had the prescriptions he reported. The medications did not appear in the

---

[6] Wojcik denies this fact but his denial fails to meet the substance of the statement; the cited exhibits do not contradict it.

database under "Anthony Avado," however, because they were listed under "Cezary Wojcik." (Wojcik does not allege or provide evidence that he told Masi that his name was Cezary Wojcik.) Before referring Wojcik/Avado back to the general population, Masi advised him that if his symptoms worsened before his follow-up appointment, he should fill out a Health Services Request Form.

Physician Assistant Skrivan performed another assessment of Wojcik/Avado shortly after Masi's. Wojcik/Avado told Skrivan that he took multiple medications but was unable to provide the names of those medications. Skrivan's assessment report describes Wojcik/Avado as a "poor historian" of his medical history, DSOF Ex. D, SAO WOJCIK 00014,[7] and that he attempted but was unable to verify Wojcik/Avado's prescriptions with Jewel's pharmacy; Skrivan also looked under the name "Avado" rather than "Wojcik." Skrivan noted that Wojcik/Avado did not appear to be in any distress but that his blood pressure was slightly elevated. Skrivan prescribed Wojcik/Avado with two blood pressure medications, Amlodipine and Propranolol, referred him for follow-up counseling regarding his medications, and marked the referral as urgent. Skrivan completed Wojcik/Avado's intake on June 27 and referred him to the medical infirmary for his housing assignment.

The next day, on June 28, Wojcik/Avado submitted the Health Services Request Form that Masi advised him to submit if his symptoms worsened. On that form, Wojcik/Avado hand wrote his name as "Anthony Avado"; the name "Cezary Wojcik" does not appear. Wojcik/Avado listed several medications he had taken the day before: Alprazolam, Clonazepam, Norvasc, Vicodin, and two other medications that are illegible. Nurse Howell responded to Wojcik/Avado's submission

---

[7] For example: Wojcik, who had just been convicted and sentenced for driving under the influence, denied any history of alcohol use.

of the Health Services Request Form. Initially, Howell was unable to verify Wojcik/Avado's medication because it was listed under the name "Wojcik," but the medication was ultimately verified and needed to be delivered from the pharmacy. Wojcik/Avado also complained to Howell about back pain. Wojcik/Avado's medical records show that he was given Tylenol, but Wojcik, in his response to the defendants' statement of facts, denies being given Tylenol.

Also on June 28, Wojcik's attorney visited CCJ with Judge Sullivan's order and complained that Wojcik had been placed in the general population at CCJ rather than at Cermak. Wojcik does not allege to whom his attorney complained, or who his attorney made aware of Judge Sullivan's order. Wojcik contends that as a result of not receiving his prescribed medications, he experienced withdrawal symptoms, including heart and neurological problems that caused him to fall on a staircase at CCJ, resulting in injury to his back (which, he says, had already been broken during transport from the courthouse the day before) and knees and a "broken" hernia. PSOF ¶¶ 16, 25. Wojcik says that he was required to use the stairs even though there was an elevator nearby. Wojcik does not allege that any defendant was aware of this fall.

Wojcik did not seek medical attention at CCJ on June 29 or 30. When Avado was released from CCJ on June 30, however, he was experiencing shortness of breath, a racing heartbeat, and difficulty walking. After he was released, he took a taxi to Rush Hospital. Wojcik reported chest pain and shortness of breath at Rush, and his EKG performed there was abnormal, but Wojcik told his treating physician approximately two hours after arriving at Rush that he felt better.

Wojcik was again incarcerated at the CCJ several years later, in 2016, this time for 120 days. Pl.'s Opp'n to Def.'s Mot. for Summ. J. ¶ 1, ECF No. 138.[8] The judge in that case also

---

[8] The defendants assert that this document, which is not authorized to be filed by the local rules, should be stricken for that reason and for its lack of relevance. The Court agrees that the content of the document, which pertains almost entirely to events relating to Wojcik's subsequent

ordered that Wojcik be sent to Cermak. *Id.* In connection with his 2016 incarceration, Wojcik and his sentencing order were sent to Cermak, Wojcik was transported in a van for inmates with special needs, and Wojcik was given his prescription medication. *Id.* ¶¶ 1, 3, 5.

Wojcik, initially with retained counsel, brought suit alleging that the defendants were deliberately indifferent to his need for his prescription medications while he was incarcerated at CCJ from June 27 to 30, 2013. Wojcik's retained counsel filed both the initial complaint and the amended complaint but later filed a motion to withdraw citing irreconcilable differences, a breakdown in communications, and concerns about the viability of Wojcik's claims. This Court granted Wojcik's retained counsel's motion to withdraw contingent on their contacting Wojcik to inform him that he must find new counsel or enter a *pro se* appearance within 21 days. About two months later, Wojcik's retained counsel filed a status report reporting that Wojcik had not responded to attempts to contact him by certified mail, email, or phone. Wojcik then failed to appear at a status hearing the following month, and his counsel reported that they still had not received any response from Wojcik despite making every possible attempt to contact him. Magistrate Judge Kim then recommended that this Court dismiss the matter for failure to prosecute based on Wojcik's lack of cooperation with his attorneys and his failure to contact the court and comply with its orders.

Wojcik's retained counsel subsequently filed a letter with the Court explaining that Wojcik had just been released from prison, but that he had not informed his counsel the he would be going to jail in the near future. Wojcik appeared during the next status hearing and claimed that his counsel knew where he was going and how long he would be there. Wojcik was granted two

---

incarceration at the CCJ in 2016, has no relevance to the claims in this case. It is not necessary to strike the document from the record.

months to retain new counsel but was unable to retain replacement counsel. Wojcik subsequently filed a motion for attorney representation, which this Court granted. Appointed counsel moved to withdraw roughly two months after being appointed, reporting that they had diligently reviewed the record and had multiple conversations with Wojcik but could not go forward advancing Wojcik's claims consistent with their ethical obligations to the Court. This Court granted appointed counsel's motion to withdraw. Wojcik was granted another month to retain new counsel but filed another motion for attorney representation after he was unable to retain new counsel. In light of the inability of both retained and appointed counsel to continue asserting Wojcik's claims consistent with their ethical obligations, Wojcik's apparent lack of communication with his original counsel, and Wojcik's failure to explain why he was unable to proceed with this case on his own, this Court denied Wojcik's second motion for appointed counsel.

Wojcik alleges that Cook County Sheriff's deputies Kaloudis and Ali were deliberately indifferent to his serious medical needs by failing to ensure that his mittimus was properly delivered, and that CCJ defendants Kilgore, Masi, Skrivan, and Howell were deliberately indifferent to his serious medical needs by willfully disregarding his visible signs of distress and his medical needs as expressed in his mittimus. This Court previously granted in part the defendants' motion to dismiss Wojcik's amended complaint, dismissing *Monell* claims asserted against the County. *See* Mem. Op. and Order, ECF No. 37. The counts remaining in this case are Counts I–II, alleging that the individual Sheriff's deputy and CCJ defendants were deliberately indifferent to Wojcik's medical needs; Counts V–VI, alleging *respondeat superior* liability of Sheriff Dart and Cook County for wrongful conduct of the individual defendants committed within the scope of their employment; and Counts VII–VIII, alleging indemnification against Sheriff Dart and Cook County.

# DISCUSSION

The defendants move for summary judgment, arguing that the effects of Wojcik not receiving his prescription medication did not rise to the level of a serious medical condition, that no defendant was deliberately indifferent to his serious medical needs, and that the Sheriff's deputy defendants are protected by qualified immunity. "Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 977 (7th Cir. 2014). To show that a material fact is disputed, the party "must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). Further, to show that there is a genuine fact issue, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Many of the fact disputes that Wojcik posits fail to satisfy these standards, others are irrelevant to his claim against the named defendants, and none (individually or collectively) would permit a reasonable jury to find in his favor.

The Eighth Amendment, as incorporated through the Fourteenth Amendment, imposes "a duty on states to provide adequate medical care to incarcerated individuals. Officials violate this duty if they display deliberate indifference to serious medical needs of prisoners." *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013) (citations and internal quotation marks omitted). For Wojcik's claims to survive summary judgment, then, he must point to specific facts in the record that would allow a reasonable jury to conclude that both elements of a deliberate indifference claim have been satisfied. That is, Wojcik "must present evidence supporting the conclusion that he had

9

an objectively serious medical need. A medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Id.* Wojcik must also present evidence supporting a conclusion "that the defendants were aware of his serious medical need and were deliberately indifferent to it. Deliberate indifference is more than negligence and approaches intentional wrongdoing." *Id.* The state of mind required to establish deliberate indifference is "essentially a criminal recklessness standard, that is, ignoring a known risk. Even gross negligence is insufficient to impose constitutional liability" on the defendants. *Id.* at 481. To be liable for deliberate indifference, a defendant "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, although the evidence supports the existence of a serious medical need,[9] there is no evidence giving rise to a reasonable inference that any defendant knew about a significant risk to Wojcik's heath and deliberately or recklessly disregarded that risk. Wojcik alleges that deputies Kaloudis and Ali failed to present Wojcik's mittimus to officials at Cermak or to the individual CCJ defendants even though they knew about the mittimus and Wojcik's serious medical condition. *See* Am. Compl. ¶ 17, ECF No. 16 ("Defendant Kaloudis and/or Defendant Ali acted willfully and/or wantonly in failing to present plaintiff's mittimus to officials at Cermak Memorial Hospital notwithstanding their knowledge of the Court order and the plaintiff's serious medical condition as reflected in the court's mittimus.") (capitalization omitted); *see also id.* at ¶ 30

---

[9] Wojcik had been prescribed six different medications to treat various conditions, and the state court judge ordered him to serve his sentence in a hospital, so the evidence is sufficient to support a finding that Wojcik suffered from serious medical needs that required ongoing treatment by means of the prescribed medication and hospitalization.

("While in the custody and care of one or more individual defendant Sheriff Deputies, one or more individual defendant Sheriff deputies failed to ensure plaintiff's mittimus reached the individual Cook County defendants.") (capitalization omitted). But to support this allegation, Wojcik offers nothing more than the facts that Kaloudis processed him at the courthouse and Ali transported him to CCJ. Wojcik has adduced no evidence that Kaloudis had any responsibility for transporting him, or the mittimus, to the CCJ or Cermak; so far as the record reflects, Kaloudis included the judge's order with Wojcik's property and the order went with him to the CCJ. *See* PSOF Ex. 2; *see also* Defs.' Resp. to PSOF ¶ 3, ECF No. 143. Kaloudis's involvement was over when Wojcik was taken from the courthouse.

As for Deputy Sheriff Ali, the evidence does not establish that he knew anything at all about Wojcik's medical condition or the judge's order. As with Kaloudis, no evidence has been offered to support the conclusion that Ali had any responsibility to ensure that the mittimus was delivered to Cermak or the individual CCJ defendants rather than to CCJ for processing.[10] Through Wojcik's opposition to summary judgment, he adds an allegation that he broke his back while Ali was transporting him to CCJ,[11] but he does not contend that Ali (or any other defendant) knew that he had injured his back during the bus ride. Accordingly, a reasonable jury could not conclude that either Deputy Kaloudis or Deputy Ali was deliberately indifferent to Wojcik's medical needs.

---

[10] Further, Cermak is part of CCJ. Although Wojcik appears to dispute this, *see* Pl.'s Resp. to DSOF ¶ 6 ("The cited document says nothing about Cermark [sic] Hospital being on the ground [sic] of CCJ."), the Court can take judicial notice of that fact as it is not subject to reasonable dispute. *See Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1048 (7th Cir. 2019); *see also, e.g.*, https://www.inmateaid.com/visitation/cook-county-jail-ccdoc-cermak-hospital (providing visitation information for CCJ inmates housed at Cermak); https://www.jaildata.com/prison/cook-county-sheriff-jail-ccdoc-doc-cermak-hospital ("Cook County Sheriff Jail (CCDOC) – D.O.C. Cermak Hospital is a county jail facility").

[11] The Amended Complaint makes no such allegation.

Wojcik alleges that he "attempted to inform one or more individual Cook County [Jail] defendants of his dire medical condition," Am. Compl. ¶ 22, ECF No. 16 (capitalization omitted), and that the individual Cook County defendants had "actual knowledge via plaintiff's mittimus" of Wojcik's objectively serious medical needs, *id.* at ¶ 34. He also alleges that the individual Cook County defendants consciously and deliberately disregarded the risk of substantial harm to Wojcik stemming from those medical needs. He offers no evidence, however, that any defendant had actual knowledge of his medical needs as expressed in his mittimus, let alone that any defendant was deliberately indifferent to those medical needs. To the extent that the Cook County defendants observed or were otherwise made aware of Wojcik's medical needs, the evidence supports the conclusion that they made efforts to understand and respond to those needs, not that they deliberately disregarded them. Just as with the deputy defendants, it does not follow from the mere fact that the CCJ defendants interacted with Wojcik that they must be responsible for Wojcik's mittimus not being properly processed or that they were deliberately indifferent to his medical needs as expressed therein.

Each of the CCJ defendants made efforts to verify the prescriptions Wojcik/Avado reported, referred him for further evaluation, or both. Those referrals ultimately led to Wojcik/Avado being referred to the medical infirmary for his housing assignment. Wojcik/Avado's medications were ultimately verified, and although those medications do not appear to have been delivered to Wojcik/Avado before the end of his brief term of incarceration, there is no evidence to suggest that the delay was the result of deliberate indifference on the part of any defendant identified in this case. The defendants' conduct is alleged to have been deficient only to the extent that they failed to take action that Wojcik has not provided a reasonable basis to believe the defendants should have known at the time to take.

Kilgore first evaluated Wojcik/Avado and noted that he "appeared normal" but referred him for further mental health evaluation anyway because of his self-report of having received prescriptions for "psych meds" in the past. Kilgore is not alleged to have known of the mittimus or the list of prescriptions that accompanied Wojcik to the CCJ. Wojcik/Avado was next evaluated by Masi. Wojcik/Avado claims that he "[a]dmitted to taking medications including Xanax 2 mg and Clonazepam 2 mg which was explained to Rebecca Masi that the documents were in a placed in sealed plastic bag with [his] clothes on June 27, 2013." PSOF ¶ 6 (grammatical errors preserved). The evidence to which Wojcik cites for this assertion suggests that he told Masi that he was taking Xanax and Clonazepam, *see* DSOF Ex. D, SAO WOJCIK 00011, ECF No. 129-5, but not that he told Masi about the court order. Further, the most natural reading of this assertion is that the documentation he claims he told Masi about related only to his Xanax and Clonazepam medications; nothing in that assertion would have alerted Masi that the documentation to which Wojcik/Avado was referring would show that his medical needs were more extensive than those he was expressing verbally. Perhaps Masi's best course of action would have been to immediately investigate what was reflected in those documents anyway. But to survive summary judgment, Wojcik must point to specific facts giving rise to a reasonable inference that a defendant acted with a state of mind akin to criminal recklessness. *See McGee*, 721 F.3d at 480–81. Failing to take a course of action that with the benefit of hindsight may appear to have been the best course of action does not, without more, give rise to an inference that Masi failed to investigate the contents of those documents with a state of mind akin to criminal recklessness. Masi was aware that Wojcik/Avado had an upcoming follow-up appointment and still advised him to submit a Health Services Request Form if he needed more immediate attention. *See* DSOF Ex. D, SAO WOJCIK 00013 (Masi "encouraged [Wojcik/Avado] to fill out a yellow Health Service Request form if

symptoms worsen before [his] follow up appointment."). Wojcik/Avado filled out that form the next day and was further evaluated.

Masi, moreover, was hardly indifferent to whether Wojcik/Avado required prescription medications; she attempted to verify his medications but was unable to do so because he was using his "Avado" alias. The same is true for defendant Skrivan, who also attempted to verify Wojcik/Avado's claims about his prescription. There is no evidence, for example, that any defendant disregarded a suggestion that they should search prescription drug databases under the name "Wojcik" instead of "Avado." Skrivan's regard for Wojcik/Avado's medical needs is also evident from his referral of Wojcik/Avado to the medical infirmary for further medical evaluation, and marking of the referral as urgent, even though Skrivan is not alleged to have in any way been aware of Wojcik/Avado's mittimus.

The final defendant to evaluate Wojcik/Avado was Howell, who verified Wojcik/Avado's medications and requested those medications from the pharmacy. It appears that those medications were not delivered before Wojcik/Avado was released two days later, but there is no basis in the record to conclude that Howell or any other defendant could have (or should have) done more to ensure that the medications were delivered sooner.

As for his allegations concerning his back injury, the defendants contend, and the medical records support, that Wojcik/Avado "complained about lower back pain" to Howell, and that Wojcik/Avado "was given Tylenol." DSOF ¶ 37. Wojcik, in response to this statement of fact, "affirmatively states that he wasn't given Tylenol." Pl.'s Resp. to DSOF ¶ 37. But Wojcik offers no testimonial or other evidence in support of this denial, so it may not even clear the "scintilla" standard, but even if it did, the dispute would not be material for at least two reasons. First, Wojcik has not alleged or adduced evidence that Howell knew that he had fallen on the bus or on the stairs,

that his pain was severe,[12] or that Howell was aware of the severity of his pain. And second, this dispute has nothing to do with Wojcik's claim. Wojcik's amended complaint says nothing about the failure to provide adequate care for his back injury and founds no claim on that basis.

What the record in this case establishes is that Judge Sullivan's order that Wojcik serve his time in the Cermak Hospital and that he be administered his prescription drugs was not carried out. That is unfortunate. That failure does not, however, mean that any defendant named in this suit violated Wojcik's constitutional rights by recklessly disregarding Wojcik's serious medical conditions. Others—the CCJ intake officer, for example—may have been aware of Judge Sullivan's order and the need to ensure that his prescription medications were administered, but the plaintiff has not identified them.[13] And several of the defendants could, perhaps, have done more to ferret out Wojcik's need for medications, but no reasonable jury could, on this record, conclude that any of the named defendants were recklessly indifferent to Wojcik's medical needs as expressed in his mittimus or otherwise. On this record, it is plain that the fundamental cause of the problem in identifying Wojcik's medications was not due to the indifference of any of the named defendants but to the Wojcik's own actions in using an alias that differed from the name in which his prescriptions had been issued. And because the deliberate indifference claims against the individual defendants fail and Wojcik has not asserted any other theory of relief against the individual defendants, the *respondeat superior* and indemnification claims premised upon the conduct of the individual defendants also fail.[14]

---

[12] Notably, in this regard, Wojcik did not complain of back pain or injury when he went to Rush hospital upon his release from custody.

[13] The Court intends no finding that any other person would, in fact, be liable on Wojcik's claims.

[14] The Court need not reach the question of whether the defendants' actions were protected by qualified immunity. Had Wojcik asserted facts giving rise to an inference that any defendant deliberately disregarded a court's order requiring that Wojcik receive prescription medication,

15

* * *

For the reasons stated above, the defendants' motion for summary judgment, ECF No. 128, is granted.[15]

Dated: August 30, 2019

John J. Tharp, Jr.
United States District Judge

---

however, it is unlikely that such a defendant could establish that he or she did not violate Wojcik's clearly established rights.

[15] Wojcik's motion to strike the defendants' motion for summary judgment, ECF No. 139, which is devoid of any explanation of the alleged deficiency in the defendants' motion, is also denied.